In the Matter of the Estate of LUCY W. JAMES, Deceased.*

Surrogate's Court, New York County, April 8, 1938.

*Patterson, Eagle, Greenough & Day* [*William Greenough* and *Aloysius F. Schaeffner* of counsel], for the proponents.

*Garey & Garey* [*Earl J. Garey* and *Edwin F. X. Silk* of counsel], for William Alfred Bowles.

*Carrol A. Muccia,* special guardian for infants (non-residents).

FOLEY, S. This is a motion to dismiss a pending proceeding for the probate of the alleged last will and testament of the decedent. The decedent died in this county on January 19, 1938, a resident of the State of Rhode Island. She left an estate of approximately $2,000,000. At the time of her death she was the owner of a co-operative apartment at 39 East Seventy-ninth street, New York city. She maintained a safe deposit box, the contents of which are as yet unknown, at the uptown office of the Fulton Trust Company of New York, 1002 Madison avenue, New York city. She also had on deposit in that trust company cash in excess of $25,000. In the same company there were held in a custody account for her stocks and bonds valued as of the date of her death at more than $250,000. There were also in the possession of the decedent's attorney, a member of a New York law firm and one of the executors named in a codicil, certificates of stock of the approximate value of $1,500,000. She left household effects and jewelry located at her New York apartment and furs stored with C. G. Gunther's

* Affd., 254 App. Div. 723.

Sons, 666 Fifth avenue, New York city, of an estimated value of approximately $33,000. Her realty and personalty in Rhode Island are of relatively small value. The personalty consists of household furniture and effects worth $22,000. She had a balance of $800 in a checking account with the Newport Trust Company.

The alleged will designated the Fulton Trust Company of New York as executor and trustee, and in the event of its failure to qualify designated the Bankers Trust Company of New York to act in its place. The codicil dated August 6, 1937, appoints two individuals, " both of 120 Broadway, New York City," to act as executors and trustees with the corporate fiduciary. The will specifically refers to the corporate executor qualifying " as my executor in the State of New York." It further refers to the resolution and declaration of trust creating the New York Community Trust and to the filing and recording thereof as provided by " Chapters 622 and 623 of the Laws of 1926 of the State of New York " (Pers. Prop. Law, § 12; Real Prop. Law, § 113.) Approximately eighty per cent of the estate is to be devoted to New York charitable purposes. If the instruments are admitted to probate, these funds will be administered in this State. The instruments throughout indicate strongly an intent to have the estate administered in the State of New York. Under these circumstances the surrogate in the exercise of his discretion will not dismiss the probate proceeding or transmit the instruments to the State of Rhode Island. Since there is both tangible and intangible personal property within this county the jurisdiction of this court to entertain the proceeding for the probate of the instruments is well recognized. (Dec. Est. Law, § 23; Surr. Ct. Act, §§ 45, 47, 144; *Matter of McCullough*, 129 Misc. 113.)

Among the authorities cited in my decision in the *McCullough* case was *Matter of Connell* (221 N. Y. 190), where the Court of Appeals, considering the statutory provisions respecting the surrogate's jurisdiction, stated (at p. 194) " that a will of personal property executed by a non-resident according to the laws of the testator's residence may be admitted to probate in this State. But personal property of the decedent must be found here." The court further stated (at p. 195): " Reading these sections together, where a petition is presented by a person interested in the estate showing the death of a non-resident, the execution of the will and the presence of personal property within the surrogate's jurisdiction, it is the duty of the surrogate to admit such will, if properly executed, to probate in this State, unless it also appears that such will has been duly admitted to probate elsewhere. The burden of showing such fact is upon the party objecting to the probate."

In the instant case the instruments have not been offered for probate elsewhere.

In *Matter of Rubens* (128 App. Div. 626; affd. on opinion below, 195 N. Y. 527) the appellate courts sustained the probate in this State of a non-resident's will which was executed according to our laws but not according to the laws of the decedent's domicile. In that case it was held that the execution of the will in accordance with our law was sufficient to safeguard the authenticity of the instrument and permit its admission to probate in this State. The principles laid down in the *Rubens* case were considered by me in *Matter of Hart* (160 Misc. 198), wherein I stated (at p. 199), " a will of a non-resident may always be admitted to probate in this State, either as to realty or personalty, if it was executed in accordance with our laws." That decision was modified in the Appellate Division as to the amount of costs and as so modified affirmed (250 App. Div. 753).

In *Higgins* v. *Eaton* (202 Fed. 75; certiorari denied, 229 U. S. 622) the Federal courts recognized the right of the State of New York to entertain independent probate proceedings even where the instrument was denied probate in the foreign domiciliary State. The decision of the Circuit Court of Appeals in that case stated: " The State of New York with respect to personal property within its territory declines to be bound by the rule of comity and permits the independent proof of a testamentary disposition of such property notwithstanding that such disposition may be void according to the law of the decedent's domicile. It also necessarily follows that the probate of wills disposing of personal property establishes them as instruments transmitting the title to such property."

The motion to dismiss the present proceeding is, therefore, denied. Since there is no real property in this jurisdiction, the petition and papers in the proceeding should be amended so that the same may go forward as a probate of a will of personal property only, and not as a will of real and personal property. (*Matter of McCullough, supra.*)

Cases may arise where the discretion of the surrogate may be exercised by the denial of an application for original probate in his court (*Matter of Leonori*, 130 Misc. 499; *Matter of Wolf*, 144 id. 256; *Matter of Feeney*, 158 id. 246), but persuasive reasons must be presented to justify the transmission of the testamentary instrument to the State of domicile for disposition there. No reason for such action has been presented in the pending application.

The petitioner will be allowed five days from the return of the commissions to take the testimony of the subscribing witnesses, within which to file objections to the probate. Submit order on notice accordingly.